We have three cases this morning and the first is number 16-4106, United States v. Welshans, Ms. Pietropalo and Ms. Irwin. May it please the court, my name is Renee Pietropalo and I represent the appellant Christopher Welshans. With the court's permission I'd like to request two minutes for rebuttal. The district court erred here in applying the two-level enhancement for obstruction of justice based on the conduct of moving files to the recycling bin on a computer after learning that the police were on their way to his house. There are several different paths this court could take to find error and reverse. Do you think we're better off focusing on comment 1 or comment 4? I believe comment 4 is the simplest path, your honor. Comment 4 says if the conduct that's obstructive occurs contemporaneous with arrest then there's an additional requirement that the government has to prove that the conduct materially hindered the investigation or prosecution. What is the rationale for that, if it occurs contemporaneous with the arrest? It's the type of conduct that obstruction is meant to get at. When you look at the examples in the application note, it's not intended to get the reflexive action that giving the police the false name, the flight from the police. It's intended to get at conduct that, in fact, the commentary I should add for this particular aspect of the application note doesn't even care about attempts. Attempts are excluded under this aspect of the commentary. What they're getting at is was the conduct sort of a reflex action at a time when you know arrest is imminent. And then the next question is did it materially hinder the investigation, and here it did not. This court actually hasn't defined the contours of what it means to be contemporaneous with arrest. But here the obstruction, as I understand the facts and circumstances, occurred before the police was even in his house. So how does that qualify as an obstruction? The guidelines actually don't define it. Your argument is that it occurred contemporaneous with the arrest. Yes. And my point is the police weren't even there yet. Right. And this is akin to the knock at the door by the police and then the reflex action of flushing the drugs or the driving down the street and you see the police lights in your rear view mirror and you throw the gun out the window. The phone call, the district court found this fact, that Anita makes the morning phone call to Christopher saying, the police are on their way to your house. He has no idea how many minutes he has, but he knows they're on their way and he knows she's only 15 minutes away. His panicked reaction, the court says it's panic, is to initiate this movement of files to the recycle bin. And the movement is actually occurring, continuing to occur, the moment that the police are knocking at the door. The phone call that he received telling him, from his aunt, telling him that the police are on their way. And it's not just. Renders this a contemporaneous destruction of evidence? It's not just that the police are on their way, it's that they're on their way and they're looking for your computer. So he knows this. You're looking at what was in the defendant's mind at the moment that his reflex action was to start moving these files. In his mind, he knows that arrest is imminent. Supposing they had to get a warrant once they left the Ed's house, right? They didn't have to, but they did. They did. Supposing they went to do that and they couldn't find a judge to sign a warrant. They were riding around. It took them two hours to get to Walsh's house. Would you say that's contemporaneous? We look at the circumstances. It depends on what's in his mind. Her call wasn't, the police are going to get a warrant and then come to your house. The call was, the police are on their way to your house to look at your computer. I'd point the court to Savard, which might be the most similar case. That is, agents arrive at the boat. They knock at the boat. The defendant hides the evidence in his shoe. Some agents actually leave to confirm information, come back, talk to all the crew members, search the boat, then arrest the defendant and find the evidence. The arrest is some time later, but the court still found that's contemporaneous with arrests because we're looking at the defendant's actions. Were they taken at a time when he knows arrest is imminent? He knows from his aunt that they were just at her house looking at his computer and she was detained that whole time and they're on their way and could arrive at any minute. Even if we're in application no. 1, however, that standard is very favorable to the defendant as well because it requires that the conduct be likely to thwart the investigation. Is it your position that moving the files to the recycling bin is a precursor to deleting them or that's where they were going to stay? What does the record show? The record actually doesn't support the idea that it was the precursor, Your Honor, and I say that only for two reasons. First, again, he had this approximately 30 minutes while he's recycling, recycling. The government didn't put on any evidence that a single file was, so to speak, double deleted, put in recycle and then deleted from recycle. But more than that, they put on evidence that in the recycle bin the day the police arrived, there's about 7,000 files in the recycle bin. But the exhibit the government put in shows that some of those files were put in the recycle bin as early as September of 2013. So the bin hadn't been emptied in at least six months, not less than six months. But when we talk about attempt, we focus on the action that was taken, which is the moving of the files to the recycle bin. And then the question is, is that a substantial step toward the deletion or concealment of the files? It has to advance the purpose of deletion or concealing. And here, the step he takes in moving the files to the recycle bin takes him no closer to deleting or concealing those files than if he'd done nothing at all. Oh, yeah, certainly it does. It's just the click of a button. Once the files go into the recycle bin, all he has to do is press a button and they're gone. In other words, I think that's a sharp point. I mean, he put them in the recycle bin. That's the first step. But the second step is just as easy. Just press that delete button. The facts don't bear that out, as I said. But the second, the focus for attempt is the conduct that he took, and that's moving the files to recycle. All the experts agree that this evidence is still in the recycle bin. They can look at it. They can, one click of a button, restore it to its original location. It's more like moving a paper file in a filing cabinet from letter C for cookie to letter S for snack. There's nothing to hide. Let's assume you're right. Let's assume there should not have been a two-level enhancement. A, it was what, 151 to 188 months was the sentencing range, something like that? Correct. And the judge gave a sentence of 151 months at low end. Even if this goes back, do you think there's going to be, what would the sentencing range be without the two-level enhancement? Without the two levels, the range would be 121 to 151, and the government hasn't suggested that there's any reason the court wouldn't again impose the low end of 121 months, which is a 30-month difference under Langford and all of the cases. The burden's on the government to show this would be that rare case that the court would impose the same sentence, notwithstanding the fact that she started from the incorrect higher guideline range. Let me go back to Application No. 4. So let's assume, for the purpose of our discussion, this was a precursor to deletion. Did it result in a material hindrance to the official investigation? Absolutely not, Your Honor, because, again, those files are still in the recycle bin available, and the agent viewed all of them. But more than that, material hindrance requires an actual negative effect on the investigation. Within minutes of police arriving at Mr. Welch's house. This is an attempt, is it? Actually, Application No. 4, if we find that it's contemporaneous with arrest, attempts are excluded. It requires a material hindrance. And so within minutes of arriving, they have all of Christopher's admissions. It's my computer. I'm the only one that uses it. I take it to my aunt's house. I use her Internet. And then in the on-site preview of the evidence, the police have, it's the IP address. They have the torrent file. They have the actual images that were shared in February. And they have, more than that, they have 10,000 other images on the computer. So it has no effect on the investigation or prosecution. Do you wish to make any arguments with regard to the first issue you brought up, that was plain error by the conduct of trial? I do, Your Honor. I think that Cunningham is really the core case in support of our position here, Your Honor. That dealt with images. It did. The court, as you well know, held that actual images of children involved in bondage and sexual violence against very young children is clearly admissible where it's entirely redundant. Here it's also entirely redundant. Two videos were admitted of the actual images. And... Your Honor, there was no objection at trial. Yeah, there was no objection. The crux of the inquiry, however we frame the standard for reviewing this under plain error, the crux is did the prejudicial evidence that come in render the defendant's version of the events worthless? And that's what happens here. We have a defense. The defendant testifies. He denies knowledge. He puts his credibility at issue. And in the closing, both parties recognize credibility is everything. And the evidence that comes in is the type of evidence that's likely to invite the jurors to decide the case on an irrational basis. The summary chart that was introduced? Yes, it's a summary chart. And it's not just saying words like bestiality and bondage. It's actually, if you'll indulge me, the agent has paragraph descriptions characterizing the evidence of a 7-9-year-old girl being bound at her wrists and ankles, subjected to a sex act by a dog. These are again the written descriptions? It's written descriptions. And it's also testimonial descriptions of the evidence describing her being bound with a choker collar and forced to perform sex acts on a dog. Isn't that consistent with Cunningham in that it wasn't a visual video? Yeah. Cunningham talks about video images, but it relies on 2nd, 5th, and 9th Circuit cases, all of which under Rule 403 address narrative descriptions and testimonial descriptions of bondage and bestiality, sexual acts between a dog and a child. And they say that's the kind of evidence that evokes a visceral reaction in jurors. So even though Cunningham specifically addressed in videos, it doesn't exclude this kind of description. If the videos can't come in, the rules of evidence say a summary exhibit describing an inadmissible exhibit is not itself inadmissible. What about the government's closing argument? Anything objectionable there? Yes, Your Honor. I highlighted that in the brief, but one of the reasons it goes toward showing why this error requires reversal is the government, when it's talking about the actual images it introduced, it's only by way of comparison to say, these images that we showed you aren't the worst of the worst. They're not the most violent. These other images are the most violent. The government then displayed for the jury that exhibit 2 with the paragraph descriptions again. It refers to the agent who was called to testify to describe the investigation into the Jenny series as her rescuer. It is a focus on the worst of the worst images, and it distracts the finder of fact from credibility assessment. Christopher, and not just Christopher's testimony, there were experts who testified there's malware on the computer, and malware could be responsible for creating a backdoor to this computer. The government's expert agreed malware can do this kind of thing. I think he found it would be improbable, but he said it was possible, and the weighing is something that the jury is required to do. So when you have this dangerously prejudicial evidence, and the effect is to erode any, or really to render worthless any defense that's based on the defendant's credibility, that's the crux of the inquiry. That's why reversal is required. Isn't there a good argument that even assuming that's correct, they should not have done this, that it was harmless error here? I would submit it can't be harmless error, and again, however you define the test, the crux is was the effect of this overwhelmingly prejudicial evidence to render the defense version of the facts worthless. That's why reversal is required. A jury can't assess this defendant's credibility, or even weigh the expert testimony, because they're so disgusted by the evidence that came in. The point is there was just so much of it. He could say, okay, malware let some in, but he did what he had. He was trying to get rid of it, but not until he really needed to get rid of it, and it was voluminous. It was voluminous. I mean, the defense was, I understand for purposes of the first argument with respect to the obstruction enhancement, I have to accept the facts as found by the court at sentencing, but at the trial the defendant said he wasn't responsible for the deletion of the files, the movement of the files to recycle. So all of that was part and parcel of the credibility determination that the jury needs to make, and that they can't make when they're given this horrific evidence. All right. We'll get you back on the phone. Thank you, Your Honor. Thank you. Thank you. May it please the Court, Laura Irwin from the U.S. Attorney's Office in the Western District of Pennsylvania on behalf of the government. Can I just ask a question at the outset relating to the last issue, or the first issue in the briefing, but the last issue we talked about. If an MSI is willing to stipulate that the images are pornographic, why not just accept that stipulation and then go from there? Why, I mean, obviously I assume there's a desire to show how bad this was, but it really seems like if it was pornographic, they stipulated it was pornographic, and then the rest would seem to be piling on. Well, Your Honor, first we're not required to accept the stipulation. I understand, but why not? Beyond that, the issue is knowledge. The contested issue in this case, as it is in most child pornography cases, is whether the defendant knew the presence of the items on his computer. What's that got to do with the stipulation? If they're stipulating it is porn, you don't have to prove it now. Correct, but we still have to demonstrate that a defendant, such as this person who's sitting there telling us that I had nothing to do with this, could not have not known, given the file names, the descriptions, the evidence showing that he opened these files, that he downloaded these files, and so on. Everything you just said doesn't require a description of what those images were. True, but we have to prove beyond a reasonable doubt to a jury of 12 people that there was a minor, and with regard to the possession count, a minor under the age of 12. So we still have to prove those elements as well. Wasn't that stipulated, too? No, he offered to stipulate to the items for child pornography, not to the age of the victims. Is that an element you have to prove, the age of the victim? It's a stipulation that there's child pornography. Is there an additional element? Yes, we have to be able to prove that there are minors under the age of 12 for the possession count. And this seems like an easy thing to prove. It is, Your Honor, but in this case, I think the important thing to remember with regard to the claim of prosecutorial misconduct, beyond the fact that we're in a case where there was no objections made on any basis to this evidence, no 403 unfairly prejudicial, no 403 cumulative, none of that occurred in this case, nor were there any objections that prosecutorial misconduct had occurred. But beyond that, the thing that's important to remember in these cases is the context. And this is an issue that was not raised in Cunningham, and this is why Cunningham is somewhat different. Cunningham's images, these are descriptions. I mean, one could argue descriptions of what was there could be just as bad, and depending on how graphic you are in terms of the description, be just as bad as the images. And that can be true, Your Honor, but the context in this case is that, and this was undisputed at the trial court, the nature of this defendant's collection, which was vast. It was over 10,000 images and over 800 videos, which accumulated to hundreds of hours of viewing time. This was the nature of his collection. What if he stipulated to those facts? If he stipulated that it was younger people, babies, all the way up to girls 8, 9, and 10? Well, under a certain age. Under 12. I suppose that he could stipulate, but again, we have the burden to show beyond a reasonable doubt. Old Chief allows us to bring our case. And keep in mind, we don't dispute that this evidence, as described by the court in Cunningham, is assessable. But this was evidence that was legally obtained, found on the defendant's computer, and we have the burden to prove beyond a reasonable doubt to 12 people that will agree on every element, that there is one image they all have to agree on. And there's nothing in Old Chief that limits us to saying, oh, we just barely want to make it. We have to prove beyond a reasonable doubt that this is the case. But there's nothing about Summary Chart 2 that's barely there. I mean, you're talking about seven rather graphic descriptions, very graphic descriptions. True enough, Your Honor. Keep in mind that that's seven of the 11 videos that were distributed that day, and we had to prove that he distributed those, and that's what that testimony goes to. And again, there was no objection to that. And they could have cross-examined him on those images if they wanted to, because the creator of that document testified. Keep in mind also, again, we can discuss Cunningham in greater detail, and we believe that it does speak only to videos. The question of descriptions was not put to the court in that case, regardless of whether cases that were cited did, because those are factually unauthentic. It was before us now. Yeah. Correct. I'm just saying that Cunningham applies to descriptions of images as well as images. It's actually to the contrary. Cunningham says, and the federal public defender argued in Cunningham, we prefer descriptions. In this case, during the 403 conference, the morning the trial started, defense counsel from the public defender's office said, we prefer descriptions. Understood. But that doesn't mean that descriptions cannot be so graphic. I mean, it depends what the words that are used. That's correct. There's no allegation that these words are incorrect. But keep in mind that these files recently – The allegation now is that those words were insightful, that they viscerally – they elicited a visceral reaction from the jury. I understand that, Your Honor. But what we have here is the context of his entire collection. If you look, for example, at Exhibit 26A, that entire torrent, it goes on for pages, the torrent starts, babies, toddlers. That was the nature of his collection. There were many examples we could have used that were much more despicable, but we didn't. We used some that were the closest to the less repulsive of his collection. We don't create the evidence. We find the evidence, and this is what we found. We found a defendant who had a collection that was of some of the worst you'd ever want to think about. I guess stepping back, it looks like you had a pretty good case, and the other side stipulated that it was pornographic. It would have been probably very easy to prove that there were victims in here under 12 that were being in the depictions in the images. So then he claims, okay, it was malware, you could deal with that, whatever it might be, and you did. But why the need to tell the jury how unbelievably bad it was when the other side had stipulated that? That's really the bottom line, the concern we had. Are you referring to the prosecutor's closing argument? Both. Both the things that were testified to and the closing argument. Well, taking each separately, the items that were testified to, keep in mind that the actual witnesses testified as to their actual nature. So we backed up those statements with examples from his collection. That's exactly right. We're disputing it didn't happen here. It's how far you need to push the envelope. Again, that's the nature of the case we had. That's the evidence we had. It's not as if we had images that were even of older children. He could question whether or not they were minors. Are they 18? Are they not 18? This is the evidence we had. We didn't have any other evidence that would show these elements based on his collection. You know, Ms. Irwin, how long this detective, I assume, testified before the jury regarding the written descriptions? I'm sorry, do I know how long he testified? Yes, how long was the testimony regarding the written descriptions? I don't recall. It was briefly touched upon, but I couldn't give you page sites as to how many pages of testimony it took. Turning back to the closing argument, we agreed that those words should not have been used. But keep in mind, the defendant used them as well. He said that they were horrible. They were not palatable. They were awful. They never disputed that nature. So both sides were using those words. With that said, we realize that it shouldn't be done, but we don't believe it rises to the level of plein air in this case. What would? You can see that it shouldn't have been done. What would be plein air? Well, we believe that you'd have to show a 403 error with regard to this evidence, which we don't believe she can show, as we explain in our brief, and you'd have to show that each of those rise to the point of prosecutorial misconduct. You have to show that we knew that we were doing something wrong, either very close to an intentional act, and there's no case law prohibiting us from bringing these descriptions in. That's what happened in Cunningham, right? There was a 403 error? That's true, but Cunningham was completely different. First of all, we didn't have the context of his collection. Second, the issue was whether or not the district court properly refused to view the documents, the images. And this court said, yes, you refused, and we're going to go ahead and do our own 403 analysis. We know from Finley that when the district court does that analysis, that it's afforded a great amount of deference. So in this case, we don't have either of those things. And keep in mind, in the instructions prior to this trial, the district court instructed the jury, and defense counsel and plaintiffs and the prosecutor were there. It is the duty of the lawyers in this case to object if there's a problem. I thought before trial that it was agreed when the court said that you could have descriptions of the images, that there was going to be a curative instruction, and yet there wasn't. Actually, Your Honor, I don't know that there's a spot in there where the court actually addressed the question of descriptions. It was never raised by the defendant. What we raised was, can you bring in these images? Did the court say that we'll let it in and we can do a curative instruction? There was never a discussion of the descriptions, Your Honor. It was never brought up by the defense. He never brought it up prior to trial. He never objected and asked for a curative instruction. And keep in mind, the voir dire in this case was very thorough. Almost a dozen jurors were excused because they didn't believe that they could cope with dealing with child pornography evidence. So we had that voir dire. When the images were put in, there was an instruction. When the images were done being shown, there was an instruction. That instruction was reiterated at the close of trial by the district court. I thought what happened pre-trial, after viewing the images, the court sided with the government and said the images, or at least descriptions, could allow the parties to question the prospective jurors, I guess it was the prospective jurors, on their ability to weigh evidence that allowed the government to submit cautionary jury instructions. In the court's view, the images were highly prohibited to show knowing distribution and possession of child pornography. So if you're allowing the government, there was a mention of some type of cautionary jury instructions, and yet there was none in the end. There was, Your Honor. The instruction was given prior to viewing each video and after each video and then at the close. There was an instruction about the videos as well as your verdict on sympathy or prejudice. I'd be happy to reread the record, but I do not believe that there was any discussion prior to trial of descriptions. Let's go to the sentencing enhancement. Was there anything that was unable to be retrieved from the computer? From the deleting box, the deleting file, or directory? No, there was not. So how can there be a materially hinder? Well, let's keep in mind what happened here. The PSR recommended the application of this enhancement based on no verdict. Understood. The defendant objected based on he believed there had been no willfulness. That was his written submission, that we had not come forward enough to show willfulness. But the court says you have to, in addition to being contemporaneous, you have to have an investigation materially hindered. Again, what happened here is he raised willfulness, when we get to the sentencing hearing, he raised materiality. Those are the two things that were discussed at the sentencing. He never raised was a contemporaneous. He never raised was there a material hindrance. So that's why we don't have a record on those two things, because they were never raised. It is true that the district court made the statement that there was some panic, but, again, the issue of contemporaneousness had not been raised. That comment doesn't get us very far. We'll come back to contemporaneous, but the point, I'm working backwards, if nothing that was attempted to be deleted ultimately was not found, in other words, if nothing was lost, how can there be a material hindrance? This is because we don't know what he's deleted. It took us time to go back through and determine, because we don't know whether he's communicating with children, we don't know whether he's producing. We didn't know what was in those files. It turns out we were able to retrieve them and what they contained. And pretty quickly, too. I'm sorry? And pretty quickly, too. I don't believe there was any testimony on how long that took. So what material hindrance was there, if any, to the prosecution? Again, we had to take the extra time to go ahead and look at those things, plus it was a contested issue at trial. It was part of the trial as to whether or not the act of deletion had anything to do with his knowledge and intent. Let's just go to the contemporaneous part. The testimony was he started deleting files at the earliest, 930 or so, right? 932. And the testimony was that they left his aunt's house at 935. Actually, there was no testimony to that. The closing statement by the prosecutor said around 935. And the defendant has conceded in his supplemental brief that Mr. Welchians knew when he was deleting. Whatever he was doing, if someone went somewhere with those files, she acknowledges that he knew the police were en route. But his aunt called. We don't even know what time she called, do we? No, we don't. But the difference can be drawn. He now admits that he did. How come no one checked the phone records? That's an easy one. Because, again, this issue was not raised at sentencing. The issue of contemporaneousness was not raised at sentencing. It was simply was it willful and was it material? Under the introductory sentence or the first sentence of Rule of Note 4D. So we have the police, the files being deleted at 932. He admits that he knew that she had called prior to that time. Prior to 932? Prior to 932. That's in her supplemental brief. I thought the time was unknown. It was after the police left, supposedly. That's the only thing we know. If the police left, according to the prosecutor, at 935, it's the only thing I know of in the record. Well, there's no evidence in the record that the police left at 935. The actual individuals that were there testified that they weren't sure what time they left. But what we do know is the time the files started to be deleted was 932. We know that the police arrived at 1010, and we know that his laptop was discovered at 1105. During that time, during that period of when they get there between 1010 and 1105, there's a lot going on. As Agent Haney testified, he wasn't just there as a forensic investigator. He was there to help do all the other things that go on during a search, secure the location, take the photographs, and then make sure that the scene was calm, because we know that Mr. Welshens was not cooperative initially. He was taken outside, specifically told that he was not under arrest. Then Agent Haney went ahead to do his search from top down of this house. He found the computers in the bedroom and eventually worked his way down. At 1105, he finds the laptop hidden in the couch, unplugs it. His preview forensic examination doesn't take place immediately. Was Welshens in the same room, or was he? At some point, he was removed and put in a police car, wasn't he? Right. I'm not sure exactly where he was when the laptop was discovered. It doesn't go to the issue of contemporaneous with an arrest? He was arrested. That's part of my point. If he's in a police car and he can't move, he's told to stay there, that's an arrest, isn't it? They never made that argument. I'd be happy to check the record to determine when he was let out of a police car. He wasn't free to walk out and leave the premises. You're probably right. I would have to probably agree with you that we're not going to let him walk away. That said, however, what the warrant that they were there for said, we are searching for child pornography. That's what he would have been arrested for. That wasn't even discovered, not even at 1105 when the plug was pulled, but the preview had to take place. Agent Haney had to get all the materials, the computers, out to the vehicle, set them up, and then run the checks. We don't have a precise time, but it certainly wasn't at 1105 that he was arrested. It was sometime later. And how an event that can start at 932 and go to at least 1105, if not longer, can be contemporaneous is hard to fathom. In his mind's eye, as soon as he gets word that they're on their way, once he understands they're on their way, he knows what they're coming for. Well, his testimony was that he thought they were coming because he had marijuana. Okay, so he knew they weren't coming to say hello. That's correct. And he wasn't afraid to leave. When they showed up, they wouldn't go out just to take a walk. Come on. I have to agree, they probably would not have, but he would not have been placed under arrest. He was told at one point that he was not under arrest. Well, regardless of what they told him, you're not under arrest because you're sitting in this locked police car. You're not under arrest. Well, again, we would know a lot more about this issue, a lot of these facts, if it had been raised before the district court. I don't think that this could possibly rise to the level of plain error on the contemporaneousness or on the material hindrance. I see my time is up. If I can talk. I just want to ask one question in connection with the fact of the material hindrance. If you move a file to the recycling bin, is that itself an attempt to delete or don't you need to do additional steps? To successfully complete the deletion, you have to do an additional step. But moving it to the recycle bin, I think it was undisputed that that is a step towards deletion. His explanation was, I use that for storage. So, in fact, the files weren't even fully deleted, were they? No, but keep in mind, he had blocked a series of almost 800 files to be moved. So that process was still going on when the plug was pulled at 1105. So the next step could not have been taken. He didn't have the opportunity. All right. Thank you. Thank you so much. His point is that he was storing files. He moved them to the recycle bin. Can you store files somewhere other than, I mean, is there a place on your computer or a laptop that you can restore files? The recycle bin is like a pre-step to deletion. Correct. But can you, if you're going to store files, say like this, can you put them somewhere else and this is where I'm going to store these files? Yes, and, in fact, that's what happened here because they had to be stored somewhere for him to move them into his recycle bin. So they were on his computer. Okay. But they're just on there somewhere stored. Right, in a directory or on a drive. Well, I'm just wondering, would you normally store files in a recycle bin? Well, his testimony – Would you move them from one spot to another just for the same purpose, to store files? His testimony was, is that I do use my recycle bin for storage. Okay. Of course, that had to be backed up against his claim that he never saw child pornography on his computer and his recycle bin was full of child pornography. All right. But a recycle bin can be used for storage of files. That was his testimony. Our expert questioned that. Okay.  Thank you. We would just ask that the Court would affirm. Okay. There's just a few facts I wanted to go over. First, the recycle bin was used for storage. There were things in the recycle bin, including 7,000 other files going back to September of 2013. The recycle bin doesn't have to be your first step toward deletion. The experts testified you can bypass the recycle bin to delete and not just delete from the computer, but also from that unallocated space using software called CCleaner that actually was on Mr. Welshand's computer on the time and was not used. The problem is we're looking at this in context. Yes. And the context is that he gets a phone call and there's a laptop and the laptop is functioning and it's stuck between two cushions in his house and the detective comes in and sees that their files are being deleted. So shouldn't we look at this in context rather than the technical aspect of the case? Yes. The testimony was that the agent saw the files being recycled, which really undermines his position that it's closed and shoved in between two cushions. If you close a laptop, the laptop goes to sleep. For him to have seen this recycling happening, the laptop had to be open, which is consistent with Mr. Welshand's testimony. The government really wants to have it both ways. Their closing argument to the jury was that the deletion of these files, the movement of files to the recycle bin is happening as the agents are walking in the front door, that he knows he doesn't have a lot of time. She says he looks close to his aunts and he starts recycling in haste. He's rushing. If all of that is true and that's their argument below, that goes to show the contemporaneousness of his conduct, his spontaneous reflexive action, knowing at the moment he knows police are on their way. And, Your Honor, Judge Fuentes, you asked when was he taken from the home. Police arrived at 10-10 and immediately removed him from the home and put him in the police cruiser. He was never going back into the house. And the on-scene preview, in fact, revealed all of the information, including what was in the recycling bin. This isn't a case where we don't know what was in the recycling bin. The testimony was we do know what was in the recycling bin because it's in the recycling bin. This isn't the situation where the government had to restore deleted photos. Material hinder cases, you have evidence presented by the government where it took them four months to reconstitute those pictures. Or you have contemporaneous with arrest and material hindrance cases. The examples are you get a phone call, the police want you to come outside. Instead, you blow up your drug house. That materially hindered the investigation because it destroyed evidence going to prove type and quantity of drugs. That's not what we have in this case, Your Honors. The final thing I wanted to point out was this is a plein air case. We understand that the fact that trial counsel was asleep at the wheel doesn't excuse or allow the government to just pile on and pile on. And that's what happened in this case. Cunningham establishes the images can't come in. If the images can't come in, summary exhibits describing those images can't come in. The court relied on cases talking about the type of evidence here. There has to be a category of evidence that's so vile that I don't want to say presumption is presumed because presumed has sort of a legal definition and that's not what I'm suggesting. But there are cases in the federal circuits talking about, I would submit, less egregious types of evidence, spousal abuse, homosexuality, sodomy, abortion, those as the kinds of subjects that evoke this visceral reaction. And bestiality and bondage of a young child has to be among that category of evidence. Thank you very much. Thank you, Your Honor. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement. Thank you.